UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SHAKEEL AHMED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:12CV1120 JCH |
| | ) | |
| DARRELL AVISS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Darrell Aviss's Motion to Dismiss, and in the Alternative, to Transfer, filed September 20, 2012. (ECF No. 5). The motion is fully briefed and ready for disposition.

**BACKGROUND**[1]

Defendant Darrell Aviss, a citizen of the State of California, holds himself out to the public as an investment advisor specializing in Swiss investments. (Compl., ¶ 2). Plaintiff Shakeel Ahmed, a citizen of the State of Missouri, was introduced to Defendant through various articles Defendant authored concerning Swiss annuities and similar investments. (Id., ¶¶ 1, 5).

Plaintiff originally contacted Defendant in or around 2007. (Compl., ¶ 6). Over the course of several years, Defendant sold Plaintiff roughly $170,000 worth of investments in Swiss annuities, which Defendant represented would produce an annual yield of approximately two percent. (Id.).

In or around 2009, Defendant initiated a call to Plaintiff in St. Louis, in an attempt to sell Plaintiff certain fiduciary time deposits, also known as a Private Placement Memorandum (the

---

[1] The Court's background section is taken from Plaintiff's Complaint, to which Defendant has not yet filed an Answer.

"Note"). (Compl., ¶ 7). In selling the Note to Plaintiff, Defendant represented that the investment was a five year deposit, that would yield approximately a seven percent return. (Id.). Defendant further allegedly represented that Plaintiff could withdraw the money invested in the Note and avoid early withdrawal penalties and fees, if Plaintiff decided to cash out his investment before the scheduled maturity of the Note. (Id., ¶ 8).

Plaintiff eventually invested around $170,000 in the Note. (Compl., ¶¶ 9, 10). Plaintiff maintains Defendant's representations regarding the liquidity of the investment were critical to his decision to invest, as he intended to use the proceeds from the investments to purchase real property for his family. (Id., ¶ 9).

Over time, Plaintiff became concerned about the safety of the investments he had purchased through Defendant. (Compl., ¶ 11). Plaintiff requested assurances from Defendant, through the provision of either additional information or documentation, or an independent means for Plaintiff to verify the investments' validity, but his requests were refused or ignored. (Id., ¶¶ 12, 13).

In 2011, at Defendant's urging, Plaintiff met with Defendant in Defendant's office. (Compl., ¶ 14). Plaintiff was uncomfortable with Defendant's high-pressure sales tactics. (Id., ¶ 16). In light of this discomfort, coupled with Plaintiff's concerns regarding the safety and liquidity of his investments, Plaintiff instructed Defendant to cash out his Swiss annuities in March, 2012, and return the funds to Plaintiff's personal account. (Id.). Defendant agreed, but then failed to deposit the money as requested. (Id., ¶¶ 17, 18).

Upon inquiry from Plaintiff, Defendant eventually advised Plaintiff that, contrary to Plaintiff's instructions, the funds from the Swiss annuities were deposited into the Note, which locked in and made illiquid until 2014 the approximately $200,000 that was withdrawn from the annuities. (Compl., ¶ 20). As a result, Plaintiff was forced to sell a number of other investments at a loss, in order to

meet the closing date on the real property he was purchasing for his family. (Id., ¶ 21). Plaintiff thereafter contacted Defendant, who allegedly acknowledged his mistake, and promised to return the funds immediately. (Id., ¶ 22). Despite this assurance, Defendant failed to return the funds, and refused to provide information enabling Plaintiff to verify the safety of his money. (Id., ¶¶ 23-25).

Plaintiff eventually learned the funds were not deposited as instructed, but instead were invested in accounts maintained at different financial institutions than that previously promised by Defendant. (Compl., ¶ 28). Upon confrontation Defendant acknowledged the discrepancy, and further informed Plaintiff his funds were locked in and illiquid for an additional five years. (Id., ¶ 31). Plaintiff then demanded the immediate return of his money, but Defendant refused to provide the funds without first receiving a signed, written release from Plaintiff absolving and releasing Defendant from blame for the alleged mishandling. (Id., ¶¶ 32, 33). Defendant further refused to honor his promise that he would return Plaintiff's money at any time without assessing early withdrawal penalties and fees. (Id., ¶ 34).

Plaintiff filed his Complaint in this matter on June 21, 2012, asserting claims for Breach of Contract (Count I); Breach of Duty of Good Faith and Fair Dealing (Count II); Negligence (in the Alternative) (Count III); Fraud and Rescission (Count IV); Imposition of Constructive Trust (Count V); Breach of Fiduciary Duty (Count VI); Unjust Enrichment (Count VII); Conversion (Count VIII); Assumpsit/Money Had and Received (Count IX); Action Arising under the Missouri Merchandising Practices Act (Count X); For Equitable Accounting (Count XI); and Injunctive Relief (Count XII). (Compl., ¶¶ 35-105). As stated above, Defendant filed the instant Motion to Dismiss, and in the Alternative, to Transfer, on September 20, 2012. (ECF No. 5). Specifically, Defendant maintains his contacts with Missouri were not sufficient to establish that he purposefully availed himself of its benefits and protections, and thus the Court lacks personal jurisdiction over him. (Id.).

# DISCUSSION

## I. Motion To Dismiss

As stated above, in his Motion to Dismiss Defendant contests whether this Court properly may exercise personal jurisdiction over him. In the context of a motion to dismiss, this Court has held as follows:

> The party invoking jurisdiction of a federal court bears the burden to show that jurisdiction exists. To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff is only required to make a prima facie showing of personal jurisdiction over the defendant. If the district court relies on pleadings and affidavits, the court must look at the facts in the light most favorable to the party invoking personal jurisdiction, and resolve all factual conflicts in favor of that party.

Anheuser-Busch, Inc. v. City Merchandise, 176 F.Supp.2d 951, 955 (E.D. Mo. 2001) (internal citations omitted).

A federal court engages in a two-step inquiry to determine whether it may exercise jurisdiction over a non-resident defendant. First, the court must determine whether the defendant committed one of the acts enumerated in the state long-arm statute. Angelica Corp. v. Gallery Mfg. Corp., 904 F.Supp. 993, 996 (E.D. Mo. 1995). If so, then the court must determine, "whether the exercise of personal jurisdiction over [the] defendant comports with the Due Process Clause of the Fourteenth Amendment." Id. (citations omitted). The Eighth Circuit recently held that courts should not collapse the dual inquiry into a single inquiry, but instead must separately consider whether Defendant's actions fall within the purview of Missouri's long-arm statute, and whether the exercise of jurisdiction over Defendant by a Missouri court comports with due process requirements. Myers v. Casino Queen, Inc., 689 F.3d 904, 909-910 (8th Cir. 2012).

### A. Missouri Long-Arm Statute

Missouri's long-arm statute provides in relevant part as follows:

> 1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:
>
> ...
>
> (3) The commission of a tortious act within this state[.]
>
> ...

Mo.Rev.Stat. § 506.500. "Missouri's long-arm statute covers extraterritorial tortious acts that yield consequences in Missouri." Furminator, Inc. v. Wahba, 2011 WL 3847390, at *2 (E.D. Mo. Aug. 29, 2011) (citing Bryant v. Smith Interior Design Group, Inc., 310 S.W.3d 227, 232 (Mo. 2010)); see also Myers, 689 F.3d at 910.

In his Complaint Plaintiff alleges Defendant committed the intentional tort of fraud, by representing to Plaintiff that he, "would only invest Plaintiff's funds in the amount and as specified by Plaintiff, that the funds would be maintained in the custody of a particular financial institution, and that they would be secure." (Compl., ¶ 48). "Under Missouri's long-arm statute, the commission of a tortious act within Missouri brings a Defendant within the jurisdiction of Missouri courts," and as noted above, "[e]xtraterritorial acts that produce consequences in the state, such as fraud, are within the reach of the tortious act section of the Missouri long arm statute." Warren v. Cardoza Pub., Inc., 2011 WL 6010758, at *7 (E.D. Mo. Dec. 2, 2011) (internal quotation marks and citations omitted). The Court thus concludes Defendant's alleged acts fall within conduct specified in Missouri's long-arm statute, see Furminator, 2011 WL 3847390, at *2, and so turns to consideration of whether asserting personal jurisdiction over Defendant comports with due process.

### B. Due Process

In analyzing whether a party's contacts with the forum state comport with the dictates of

constitutional due process, the Eighth Circuit has held as follows:

> The Due Process Clause requires that minimum contacts exist between the nonresident defendant and the forum state before the court can exercise jurisdiction over the defendant. Sufficient contacts exist when the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there[2], and when maintenance of the suit does not offend traditional notions of fair play and substantial justice. In assessing the defendant's reasonable anticipation, there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

Miller v. Nippon Carbon Co., Ltd., 528 F.3d 1087, 1090-91 (8th Cir. 2008) (internal quotation marks and citations omitted).

In this circuit, the due process standard has been expressed as a consideration of five factors: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relationship of those contacts with the cause of action; (4) Missouri's interest in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." Myers, 689 F.3d at 911 (citation omitted).[3] The first three factors are primary considerations, while the latter two are secondary. Norrise v. Union Pacific R. Co., 2008 WL 2859155, at *3 (E.D. Mo. Jul. 23, 2008).

Furthermore, "[i]n cases involving allegations of fraud, courts apply the *Calder* 'effects test'

---

[2] In other words, the defendant's contacts with the forum state must be more than "random," "fortuitous," or "attenuated." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985).

[3] With respect to the third factor, courts distinguish between general jurisdiction and specific jurisdiction. Miller, 528 F.3d at 1091. "General jurisdiction arises when a defendant's contacts with the forum state are so continuous and systematic that the defendant may be subject to suit there for causes of action entirely distinct from the in-state activities; specific jurisdiction arises when the defendant has purposely directed its activities at the forum state, and the cause of action relates to those activities." Norrise, 2008 WL 2859155 at *4 (internal quotation marks and citations omitted); see also Miller, 528 F.3d at 1091. Plaintiff here does not contend the basis for personal jurisdiction is the "continuous and systematic" contacts with the state required for general jurisdiction, and so the Court considers only whether Defendant's contacts are sufficient for specific jurisdiction. Miller, 528 F.3d at 1091.

to determine if jurisdiction is consistent with due process." Warren, 2011 WL 6010758, at *8 (citing Calder v. Jones, 465 U.S. 783, 789-90 (1984); Oriental Trading Co., Inc. v. Firetti, 236 F.3d 938, 943 (8th Cir. 2001)). "Pursuant to the effects test, a defendant's tortious acts can serve as a source of personal jurisdiction only where the plaintiff makes a prima facie showing acts 1) were intentional, 2) were uniquely or expressly aimed at the forum state, and 3) caused harm, the brunt of which was suffered--and defendant knew was likely to be suffered--in the forum state." Id. (internal quotation marks and citations omitted). "The effects test confers jurisdiction over an out of state defendant who performs a tortious act performed for the very purpose of having consequences felt in the forum state." Id. (internal quotation marks and citations omitted). In the Eighth Circuit, however, the Calder test is used merely as an additional factor to consider when evaluating a defendant's relevant contacts with the forum state; "[i]n other words, courts construe the effects test narrowly and hold that, absent additional contacts, mere effects in the forum sate [sic] are insufficient to confer personal jurisdiction." Trident Steel Corp. v. Reitz, 2012 WL 1279937, at *6 (E.D. Mo. Apr. 16, 2012) (internal quotation marks and citation omitted).

In the instant case, Defendant notes that he has traveled to Missouri only once (as a six year old child traveling with his parents), has never met with Plaintiff in Missouri, and has never transacted business in Missouri. (Defendant's Memorandum in Support of his Motion to Dismiss, PP. 2-6). Defendant further contends his contacts with Missouri consist solely of participating in several phone calls (while Plaintiff was in Missouri and Defendant was in California), and sending documents via email and U.S. mail. (Id.). Based on these assertions, Defendant maintains he does not have minimum contacts with Missouri sufficient to justify the exercise of personal jurisdiction.

Upon consideration the Court disagrees, for several reasons. First, the lack of physical presence in a state cannot alone defeat jurisdiction. Oriental Trading Co., 236 F.3d at 943.

Furthermore, the Court notes the counts in Plaintiff's Complaint are rooted in allegations that the documents and communications Defendant directed to him in Missouri, to the effect that Defendant would invest Plaintiff's funds safely and as specified by Plaintiff, were misleading and sent in an effort to defraud Plaintiff, a Missouri citizen. "Taking [Plaintiff's] allegations as true, as this Court must, this case presents a ready example of facts supporting specific jurisdiction." Bryant, 310 S.W.3d at 235. In other words, by "purposely directing [his] fraudulent communications at [a] resident[] of [Missouri], the defendant[] should have realized that the brunt of the harm would be felt there... and [he] should have reasonably anticipated being haled into court there." Oriental Trading Co., 236 F.3d at 943 (citation omitted). See also Bryant, 310 S.W.3d at 234 ("Numerous cases from other jurisdictions have held that the sending of fraudulent documents into a state constitutes a purposeful availment of the privilege of conducting activities within the forum state and provides the minimum contacts necessary to support personal jurisdiction in that state when the claim arises out of those contacts, as it does here.").[4] Under these circumstances the Court finds that, viewing the allegations in the light most favorable to Plaintiff, Defendant's contacts with Missouri amount to the minimum contacts required by due process, and allow this Court to exercise personal jurisdiction over him. Defendant's Motion to Dismiss must therefore be denied.

## II. Motion To Transfer

In his motion, Defendant does not address the factors this Court must consider in deciding whether it is necessary or appropriate to transfer this case to a different venue. The Court therefore will deny this portion of Defendant's motion without prejudice.

---

[4] In Bryant, the Missouri Supreme Court further rejected defendant's assertion the court should disregard its contacts with the forum state because it was plaintiff who initiated the business relationship, as, "whether a party solicited the business interface is irrelevant, so long as defendant then directed activities to the forum residents." Bryant, 310 S.W.3d at 235 (internal quotation marks and citations omitted).

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (ECF No. 5) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Transfer (ECF No. 5) is **DENIED** without prejudice.

Dated this __19th__ day of December, 2012.

                                                /s/Jean C. Hamilton
                                                UNITED STATES DISTRICT JUDGE