UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHAKEEL AHMED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:12CV1120 JCH |
| | ) |
| DARRELL AVISS, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

This matter is before the Court on Defendant Darrell Aviss's Motion for Partial Summary Judgment, filed August 30, 2013. (ECF No. 51). The motion is fully briefed and ready for disposition.

## BACKGROUND

According to Plaintiff, Defendant holds himself out to the public as an investment advisor specializing in Swiss investments. (Compl., ¶ 2). Plaintiff alleges he was introduced to Defendant through various articles Defendant authored concerning Swiss annuities and similar investments. (Id., ¶¶ 1, 5).

Beginning in or around 2007, Plaintiff and Defendant entered into a business relationship. (Answer, ¶ 6). During the course of that year, Plaintiff purchased and acquired annuities issued and sold by a Swiss insurance company. (Id.).

In or around 2009, Plaintiff and Defendant had several discussions regarding an investment via a Private Placement Memorandum (the "Note"). (Answer, ¶ 7). In describing the Note to Plaintiff, Defendant allegedly represented that Plaintiff could withdraw the money

˘ 1 ˘

invested in the Note and avoid early withdrawal penalties and fees, if Plaintiff decided to cash out his investment before the scheduled maturity of the Note. (Compl., ¶ 8).

Plaintiff alleges he eventually invested around $170,000 in the Note. (Compl., ¶¶ 9, 10). Plaintiff maintains Defendant's alleged representations regarding the liquidity of the investment were critical to his decision to invest, as he intended to use the proceeds from the investments to purchase real property for his family. (Id., ¶ 9).

Plaintiff asserts that over time, he became concerned about the safety of the investments he had purchased through Defendant. (Compl., ¶ 11). Plaintiff maintains he therefore requested assurances from Defendant, through the provision of either additional information or documentation, or an independent means for Plaintiff to verify the investments' validity, but that his requests were refused or ignored. (Id., ¶¶ 12, 13).

In 2011, Plaintiff met with Defendant at the office of SwissGuard International, GmbH ("SGI")[1], in Zurich, Switzerland. (Answer, ¶ 14). Plaintiff did not make any additional investments at that time. (Id.). Instead, Plaintiff maintains that in March, 2012, he instructed Defendant to cash out his Swiss annuities, and return the funds to Plaintiff's personal account. (Compl., ¶ 16). According to Plaintiff Defendant agreed to do so, but then failed to deposit the money as requested. (Id., ¶¶ 17, 18).

The funds from the Swiss annuities eventually were deposited into the Note, which allegedly locked in and made illiquid until 2014 the approximately $200,000 that was withdrawn

---

[1] According to Defendant, SGI conducts business as a private wealth consulting firm, and has its principal place of business in Zurich, Switzerland. (Defendant's Statement of Uncontroverted Material Facts ("Defendant's Facts"), ¶ 1). Defendant asserts SGI acts as a broker in Switzerland for various Swiss life insurance companies, and has independent contracts with those companies. (Id., ¶ 3). Defendant in turn had a "Referrer Agreement" with SGI, whereby he referred potential clients and customers who were interested in purchasing annuities and other insurance related investment products from Swiss life insurance companies. (Id., ¶ 2).

˘ 2 ˘

from the annuities. (Compl., ¶ 20).[2] As a result, Plaintiff alleges he was forced to sell a number of other investments at a loss, in order to meet the closing date on the real property he was purchasing for his family. (Id., ¶ 21). Plaintiff thereafter contacted Defendant, who allegedly acknowledged his mistake, and promised to return the funds immediately. (Id., ¶ 22). Despite this alleged assurance, Plaintiff maintains Defendant failed to return the funds at that time, and refused to provide information enabling Plaintiff to verify the safety of his money. (Id., ¶¶ 23-25).

Plaintiff alleges he eventually learned the funds were not deposited as instructed, but instead were invested in accounts maintained at different financial institutions than that previously promised by Defendant. (Compl., ¶ 28). Plaintiff maintains that upon confrontation Defendant acknowledged the discrepancy, and further informed Plaintiff that his funds were locked in and illiquid for an additional five years. (Id., ¶ 31). Plaintiff asserts he then demanded the immediate return of his money, but Defendant refused to provide the funds without first receiving a signed, written release from Plaintiff absolving and releasing Defendant from blame for the alleged mishandling. (Id., ¶¶ 32, 33). According to Plaintiff, Defendant further refused to honor his promise that he would return Plaintiff's money at any time without assessing early withdrawal penalties and fees. (Id., ¶ 34).[3]

Plaintiff filed his Complaint in this matter on June 21, 2012, asserting claims for Breach of Contract (Count I); Breach of Duty of Good Faith and Fair Dealing (Count II); Negligence (in the Alternative) (Count III); Fraud and Rescission (Count IV); Imposition of Constructive Trust (Count V); Breach of Fiduciary Duty (Count VI); Unjust Enrichment (Count VII); Conversion

---

2 The parties dispute whether in depositing the funds into the Note, rather than into Plaintiff's personal account, Defendant acted contrary to Plaintiff's instructions. (See Compl., ¶ 20; Answer, ¶ 20).
3 Through the voluntary efforts of Defendant, Plaintiff eventually received a full payment of all principal and accrued interest on his invested funds in or around September, 2012. (See Defendant's Facts, ¶¶ 13, 14).

(Count VIII); Assumpsit/Money Had and Received (Count IX); Action Arising under the Missouri Merchandising Practices Act (Count X); For Equitable Accounting (Count XI); and Injunctive Relief (Count XII). (Compl., ¶¶ 35-105). As stated above, Defendant filed the instant Motion for Partial Summary Judgment on August 30, 2013, requesting judgment as a matter of law on Count X of Plaintiff's Complaint. (ECF No. 51).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*.

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor.

*Anderson*, 477 U.S. at 255.  The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial.  *Id*. at 249.

**DISCUSSION**

The Missouri Merchandising Practices Act ("MMPA") "serves as a supplement to the definition of common law fraud [and] eliminates the need to prove an intent to defraud or reliance."  *Sales Resource, Inc. v. Alliance Foods, Inc.*, 2010 WL 5184943, at *26 (E.D. Mo. Dec. 15, 2010) (internal quotation marks and citation omitted).  It provides in relevant part as follows:

> Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020[4], may bring a private civil action in either the circuit court of the county in which the seller or lessor resides or in which the transaction complained of took place, to recover actual damages.

See Mo.Rev.St. § 407.025(1).  "The Missouri Supreme Court has found the words 'unlawful practice' are 'unrestricted, all-encompassing and exceedingly broad.'"  *Sales Resource, Inc.*, 2010 WL 5184943, at *27, quoting *Ports Petroleum Co., Inc. of Ohio v. Nixon*, 37 S.W.3d 237, 240 (Mo. banc 2001).  Thus, "[i]n order to state a claim for violation of the MMPA, plaintiff was required to allege that []he (1) [purchased] merchandise[5] from defendant; (2) for personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful by section 407.020."  *Chochorowski v. Home Depot U.S.A., Inc.*, 295 S.W.3d 194, 198 (Mo. App. 2009) (citation omitted).

---

4 Mo.Rev.St. § 407.020(1) in turn provides in relevant part as follows:  "The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…in or from the state of Missouri, is declared to be an unlawful practice."
5 "[T]he term 'merchandise' statutorily includes 'services,' Mo.Rev.Stat. § 407.010(4), which may encompass broker services."  *Sales Resource, Inc.*, 2010 WL 5184943, at *27.

In his Motion for Partial Summary Judgment Defendant maintains he cannot be held liable under the MMPA, because he did not sell any merchandise to Plaintiff. (Defendant's Memorandum in Support of their [sic] Motion for Partial Summary Judgment, P. 2). Specifically, Defendant asserts that with respect to the annuity, Plaintiff purchased said investment directly from a Swiss life insurance company, and "Defendant's only role in that transaction was the referral of Plaintiff who, for several reasons, had expressed interest in making foreign investments in Switzerland, to SGI in Switzerland that acted as a broker with the Swiss life insurance company for issuance of the annuity." (Id.). With respect to the Note, Defendant asserts the fiduciary account was with UBS in Switzerland, and that the company issued the Note directly to Plaintiff. (Id., P. 3). Defendant further maintains he did not receive payment or compensation of any kind from Plaintiff relative to his purchases of the annuity or the Note. (Id., PP. 2, 3).

In *Gibbons v. J. Nuckolls, Inc.*, the Missouri Supreme Court held that pursuant to the broad language of the MMPA, a consumer who receives services through a third party "is included within the meaning of the statute as one for whom restitution shall apply." *Gibbons*, 216 S.W.3d 667, 669 (Mo. banc 2007); *see also Torp v. General Motors Acceptance Corp.*, 2007 WL 2811437, at *3 (W.D. Mo. Sep. 24, 2007). "To hold otherwise would undermine the fundamental purpose of the Act: the protection of consumers." *Gibbons*, 216 S.W.3d at 669.

Upon consideration, the Court finds Defendant may be held liable under the MMPA. Specifically, the Court notes that while Defendant maintains he neither sold nor issued the annuity to Plaintiff, he admits that he referred Plaintiff to SGI, who then acted as a broker with the Swiss life insurance company. (Defendant's Facts, ¶ 6). Further, as noted by Plaintiff, Defendant not only had a "Referrer Agreement" with SGI, whereby he referred potential clients

and customers interested in purchasing annuities and other insurance related investment products from Swiss life insurance companies, but he also was employed by SGI as its U.S. representative and Managing Director. (Id., ¶ 2; Defendant's Amended Answers to Interrogatories, PP. 1-2; Private Placement Memorandum, P. 18). With respect to the Note, while Defendant again maintains he neither sold nor issued the Note to Plaintiff, Plaintiff asserts he purchased the Note from Swiss Management Group, Ltd., a company of which Defendant is the Managing Director. (Plaintiff's Response to Defendant's Facts, ¶ 10; Private Placement Memorandum, P. 23). *See State ex rel. Ashcroft v. Marketing Unlimited of America, Inc.*, 613 S.W.2d 440, 447 (Mo. App. 1981) (holding that under the statutory scheme, the definition of "person" clearly includes officers, salesmen, or employees of a corporation). Finally, although Defendant maintains he received no compensation of any kind in connection with Plaintiff's purchases of the annuity or the Note, Plaintiff points out Defendant received commissions from SGI on the annuity, which allegedly were "charged back" when Plaintiff demanded early withdrawals of his investments, and further realized revenues, payments and/or other compensation in connection with Plaintiff's purchase of the Note, in his role as Managing Director of the issuing company. (See Plaintiff's Response to Defendant's Facts, ¶¶ 8, 11). Under these circumstances, the Court finds that Defendant may be held liable under the MMPA, and so his Motion for Partial Summary Judgment must be denied.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Partial Summary Judgment (ECF No. 51) is **DENIED**.

Dated this 22nd Day of November, 2013.

/s/Jean C. Hamilton
UNITED STATES DISTRICT JUDGE